CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 18 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

MATTHEW BRADY SHEFFER, )
)
Plaintiff, )
) Civil Action No. 7:19CV00053
v. )
) **MEMORANDUM OPINION**
HEALTHCARE SERVICES GROUP, INC. )
) By: Hon. Glen E. Conrad
and ) Senior United States District Judge
)
AVANTE GROUP, INC., )
)
Defendants. )

Matthew Brady Sheffer, a former employee of Healthcare Services Group, Inc. ("HCSG"), filed this diversity action against HCSG and Avante Group, Inc. ("Avante"), asserting claims of fraudulent inducement, fraudulent concealment, breach of contract, and tortious interference with contract. The case is presently before the court on the defendants' partial motions to dismiss. For the reasons set forth below, the motions will be granted.

## Background

The following factual allegations, taken from the plaintiff's amended complaint, are accepted as true for purposes of the pending motions. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

Sheffer resides in Botetourt County, Virginia. In 2014, he began working as a sales director for HCSG, a Pennsylvania corporation based in Bensalem, Pennsylvania. Sheffer's employment contract "called for [him] to receive a two percent commission based on gross profit margin on any contract that [he] brokered for HCSG." Am. Compl. ¶ 11, ECF No. 42. Sheffer

alleges that "HCSG led [him] to believe, at the time of contracting, that his commission structure was fixed at 2 percent." Id. ¶ 13. Sheffer accepted the position based on the favorable commission structure. Id. ¶ 35.

On or about February 1, 2017, Sheffer secured a contract between HCSG and Avante that was worth approximately $22 million dollars.[1] Id. ¶ 16. Shortly thereafter, Sheffer discovered that three buildings included in the scope of the original contract had been "wrongly withheld from the contract, depriving the contract of certain profits and affecting . . . Sheffer's commissions." Id. ¶ 18.

On or about April 20, 2017, HCSG's Chief Revenue Officer, Mike McBryan, notified Sheffer and other sales directors that the company was changing the sales directors' commission structure. Although HCSG had "attempted to change [the] commission structure" in previous years, the modifications "were generally not implemented against [the plaintiff] until the HCSG-Avante contract." Id. ¶¶ 38–39. In May of 2017, Sheffer inquired about his commission on the contract with Avante. McBryan and Donnie Warren, HCSG's Vice President of Sales, advised Sheffer that "he would not be receiving commissions based on 2 percent gross profit, but rather the '2017 commission structure' would be applied." Id. ¶ 43. McBryan and Warren also informed Sheffer that "certain commissions had not been earned due to Avante being in arrear[s]." Id. ¶ 23.

Over the course of the following year, Sheffer "protested the 'new' commission structure being applied against him," since he had relied on the promised two percent commission in accepting employment with HCSG. Id. ¶ 44. However, the plaintiff's efforts proved

---

[1] Avante is a Florida corporation that owns and operates nursing facilities in the Western District of Virginia. See Am. Compl. ¶¶ 4, 7.

2

unsuccessful. Sheffer ultimately left HCSG on September 21, 2018, "due to HCSG's conduct." Id. ¶ 10.

## Procedural History

Sheffer filed the instant action against HCSG and Avante on January 28, 2019. The defendants moved to dismiss certain counts of the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. On June 17, 2019, the court held a hearing on the defendants' motions. At the conclusion of the hearing, the court took the motions under advisement and granted in part the plaintiff's request for leave to file an amended complaint.

On June 27, 2019, Sheffer filed an amended complaint against the defendants, in which he asserts the following claims: fraud in the inducement against HCSG (Count I); fraudulent concealment against HCSG (Count II); breach of contract against HCSG (Count III); and tortious interference with contract against Avante (Count IV). HCSG has moved to dismiss the fraud claims asserted in Counts I and II, and Avante has moved to dismiss the tortious interference claim asserted in Count IV. The motions have been fully briefed and are now ripe for review.

## Standard of Review

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson, 551 U.S. at 94. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" meaning that it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## Discussion

### I. Fraud Claims

HCSG has moved to dismiss the fraud claims asserted in Counts I and II of the amended complaint. As indicated above, Sheffer asserts claims of fraudulent inducement and fraudulent concealment against HCSG. More specifically, Sheffer asserts that HCSG fraudulently induced him to accept employment by falsely representing that he would earn a two percent commission on each contract brokered on behalf of HCSG. Sheffer also asserts that HCSG fraudulently concealed the fact that he would not be receiving a two percent commission on the contract that he brokered with Avante.

The parties agree that Virginia substantive law applies to the plaintiff's claims. "Under Virginia law, to establish a fraud claim, a plaintiff must prove 'by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'" Sharma v. USA Int'l, LLC, 851 F.3d 308, 312 (4th Cir. 2017) (quoting Evaluation Research Corp. v. Alequin, 439 S.E.2d 387, 390 (Va. 1994)). Fraudulent inducement occurs when a party induces another party to enter into a contract by making a false representation of material fact. See Abi-Najm v. Concord Condominium, LLC, 699 S.E.2d 483, 489 (Va. 2010) ("[A] false representation of a material fact, constituting an inducement to the contract, on which the [party] had a right to rely, is always ground for rescission of the contract [and] . . . is also ground for an

action for damages.") (internal quotation marks and citation omitted). Fraudulent concealment occurs when a party knowingly and intentionally conceals a material fact from another party who is acting under the assumption that the fact does not exist. Allen Realty Corp. v. Holbert, 318 S.E.2d 592, 597 (Va. 1984); see also Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 629 (4th Cir. 1999) (explaining that "concealment, whether by word or conduct, may be the equivalent of a false representation because it always involves deliberate nondisclosure designed to prevent another from learning the truth").

Fraud claims are subject to a heightened pleading standard under the Federal Rules of Civil Procedure. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). To satisfy this standard, the plaintiff "must, at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." Harrison, 176 F.3d at 783 n.5.

Rule 9(b) also provides that "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, "'generally' is a relative term." Iqbal, 556 U.S. at 686. Although Rule 9(b) excuses a party from pleading knowledge and intent under an elevated pleading standard, "[i]t does not give him license to evade the less rigid—though still operative—strictures of Rule 8." Id. at 686–87. Under Rule 8, a plaintiff cannot "plead the bare elements of his cause of action, . . . and expect his complaint to survive a motion to dismiss." Id. at 687. Instead, the rule requires the plaintiff to articulate sufficient facts to state a

plausible—not merely possible—claim for relief. Id. at 678–79; see also Tuchman v. DSC Commc'ns Corp., 14 F.3d 1062, 1068 (5th Cir. 1994) ("To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud.").

Applying these principles, the court concludes that the amended complaint fails to state a plausible claim of fraud. Turning first to the claim of fraudulent inducement, it is not enough to simply assert that HCSG "knew" at the time the plaintiff signed the employment agreement "that it had no intention of paying [him] the 2 percent gross commission over the course of the entire contractual period." Am. Compl. ¶ 34; see also id. ¶ 37 ("At the time Mr. Sheffer relied on HCSG's representations of his commission structure, upon information and belief, HCSG did not intend to pay Mr. Sheffer this commission during the duration of his employment."). Such conclusory allegations of wrongdoing are precisely the type of allegations that Twombly and Iqbal rejected. See Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (emphasizing that "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief'") (quoting Twombly, 550 U.S. at 557); see also Cty. of Grayson v. RA-Tech Servs., No. 7:13-cv-00384, 2014 U.S. Dist. LEXIS 73945, at *6 (W.D. Va. May 29, 2014) (Conrad, J.), aff'd, Cty. of Grayson v. Spane, 609 F. App'x 150 (4th Cir. 2015) (holding that the plaintiffs could not state a claim for fraud in the inducement by simply asserting that the defendants entered into the agreements at issue with no intention of performing in accordance with the agreements).

The remaining factual allegations, which pertain to actions taken after the formation of the employment contract, fail to "demonstrate the defendant's intent (at the time the promises [were] made) never to abide by the terms of the contract." Out of Chaos, Ltd. v. AON Corp., 15 F. App'x 137, 142 (4th Cir. 2001). Sheffer alleges that "HCSG attempted to change [the] commission

structure in 2015, 2016, and 2017 without new consideration," but did not enforce the modifications against him until he secured the contract with Avante. Am. Compl. ¶¶ 38–39, 47. While such allegations may support a claim for breach of the employment contract, they do not support a reasonable inference of fraudulent intent at the time the contract was formed.[2] Stated differently, the amended complaint fails to plead sufficient facts from which it can be reasonably inferred that HCSG "never intended to abide by the terms of the contract." Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 537 (4th Cir. 1988).

Moreover, despite being afforded an additional opportunity to comply with Rule 9(b), Sheffer has not done so. The amended complaint fails to plead with particularity the time and place of the allegedly false representations, or the identity of the individual(s) responsible for making them. Instead, Sheffer alleges that "HCSG" made false representations regarding a two percent commission rate "on many occasions," including the "time of contracting." Am. Compl. ¶¶ 13, 46. The court agrees with HCSG that such conclusory allegations are insufficient to meet the heightened pleading standard of Rule 9(b). Accordingly, HCSG's motion will be granted with respect to the claim of fraudulent inducement.[3]

For similar reasons, the court concludes that the plaintiff's claim of fraudulent concealment is subject to dismissal under Rule 12(b)(6). Although it is not entirely clear from the amended complaint, this claim appears to be based on the assertion that HCSG fraudulently concealed the fact that Sheffer would not receive a two percent commission on the contract that he brokered with

---

[2] The court notes that HCSG has not moved to dismiss the breach of contract claim asserted in Count III, which is premised on the same allegations as the claim of fraudulent inducement.

[3] In his brief in opposition to the motion to dismiss, Sheffer summarily requests leave to amend a second time in the event that the court concludes that the amended complaint fails to satisfy Rule 9(b). Such a request is not proper and will not be considered by the court. See ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 218 (4th Cir. 2019) (expressly declining to find that requests to amend made in opposition briefs constitute a proper motion to amend); Cozzarelli v. Inspire Pharms, Inc., 549 F.3d 618, 630–31 (4th Cir. 2008) (affirming the denial of leave to amend where the plaintiffs' request for leave was in a footnote to their response to defendants' motion to dismiss and, thus, did not qualify as a motion for leave to amend).

Avante. However, Sheffer does not point to any "word[s] or conduct" by a particular person that were intended to "prevent [him] from learning the truth." Van Deusen v. Snead, 441 S.E.2d 207, 209 (Va. 1994) (citation omitted). Instead, Sheffer alleges that Mike McBryan advised him and other sales directors about a change in the commission structure in April of 2017, and that McBryan and Donnie Warren both informed him that the new commission structure would be applied in calculating his commission on the Avante contract. See Am. Compl. ¶¶ 20, 57, 61. McBryan and Warren also advised Sheffer that his commission on the Avante contract would be affected by Avante's failure to pay in accordance with the contractual terms. See id. ¶ 23. The amended complaint is simply devoid of sufficient factual allegations to state a claim of fraudulent concealment related to the plaintiff's commission on the Avante contract. Accordingly, HCSG's motion will be granted with respect to this claim.

## II. Tortious Interference Claim

In Count IV of the amended complaint, Sheffer asserts a claim of tortious interference with contract against Avante. More specifically, Sheffer maintains that Avante tortiously interfered with his contractual right to receive a two percent commission on the gross profit from the Avante contract. To support this claim, Sheffer alleges that "[c]ommission practices are common within the industry" and that "Avante knew that [he] would be receiving a commission based on the brokering of the HCSG-Avante contract." Id. ¶ 88. Sheffer further alleges, upon information and belief, that Avante "conspired [with HCSG] to remove, under improper and illegal means, three (3) buildings from the contract" that he brokered on behalf of HCSG, and that Avante "knew[,] and/or could readily discover, that this change in the terms of the HCSG-Avante contract would greatly reduce [his] commission." Id. ¶¶ 89, 93. Sheffer also alleges that Avante's

8

actions "induced [him] to terminate his employment contract with HCSG due to the enormous costs suffered through lost commissions." Id. ¶ 97.

To state a claim for tortious interference with contract under Virginia law, a plaintiff must allege facts sufficient to establish: (1) the existence of a business relationship or expectancy with a probability of future economic benefit; (2) the defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that, absent the defendant's intentional misconduct, the plaintiff would have continued in the relationship or realized the expectancy; (4) the defendant's intentional interference including the loss of the relationship or expectancy; (5) that the defendant's interference was done by improper methods; and (6) resulting damage. Duggin v. Adams, 360 S.E.2d 832, 835–36 (Va. 1987). Improper methods include "illegal or independently tortious [acts], such as violations of statutes, regulations, or recognized common-law rules." Id. at 836.

Upon review of the amended complaint, the court concludes that it fails to state a claim of tortious interference against Avante. Even assuming that Avante was aware that Sheffer would receive a commission on any contact brokered on behalf of HCSG, Sheffer does not plausibly allege that Avante intentionally interfered with his expected commission or that such interference was committed through improper or illegal means. Sheffer's assertion that Avante "conspired" with HCSG to remove three buildings from the contract brokered by Sheffer is wholly conclusory, as is his assertion that Avante used "improper and illegal means" to do so. Am. Compl. ¶ 89. Moreover, the amended complaint does not include any facts that would allow the court to reasonably infer that Avante intentionally and improperly modified the terms of its commercial contract with HCSG in order to reduce Sheffer's commission. See SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (emphasizing that courts are not required to "accept

9

unwarranted inferences, unreasonable conclusions, or arguments" when ruling on a motion to dismiss and "can further put aside any naked assertions devoid of further factual enhancement") (internal quotation marks omitted).

The same is true for Sheffer's assertion that Avante "induced [him] to terminate his employment contract with HCSG." Am. Compl. ¶ 97. Courts have found it "axiomatic that a plaintiff cannot sustain a claim of tortious inference with business expectancy when he willingly surrendered his right to those expectancies." Stradtman v. Republic Servs., Inc., 121 F. Supp. 3d 578, 583 (E.D. Va. 2015) (quoting Taylor v. CNA Corp., 782 F. Supp. 2d 182, 204 (E.D. Va. 2010)). Even assuming that an employee can maintain a tortious interference claim based on a constructive discharge theory, Sheffer does not allege, much less plausibly demonstrate, that Avante acted with the express purpose of inducing him to terminate his employment with HCSG. See Epperson v. Va. Dep't of Corr., 77 Va. Cir. 325, 330 (Va. Cir. Ct. 2008) (explaining that a plaintiff alleging constructive discharge must prove "deliberateness" on the part of the defendant, which "'exists only if the actions complained of were intended by the [defendant] as an effort to force the employee to quit'") (quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985)).

For these reasons, the court concludes that the amended complaint fails to state a claim of tortious interference with contract against Avante. Accordingly, the court will grant Avante's partial motion to dismiss.

### Conclusion

For the reasons stated, the court will grant the defendants' motions for partial dismissal of the amended complaint, and dismiss the plaintiff's claims of fraudulent inducement, fraudulent

10

concealment, and tortious interference with contract. The case will proceed on the remaining claim for breach of contract against HCSG.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 18TH day of October, 2019.

_____
Senior United States District Judge